BLAKELY, Respondent, vs. TWINING and others, Appellants.

*September 1 — September 20, 1887.*

FORECLOSURE, *adjustment of equities:* MORTGAGE, *rights of assignee:* SETOFF.

1. P. gave a note and mortage to N. for $642, in part consideration for which N. assumed to pay a prior mortgage to W. on the same land for about $200. Without having paid that mortgage, N. assigned the $642 mortgage to B. as collateral security for his own debt of $950. The fact that N. had agreed to pay the W. mortgage was not known to B., but to stop foreclosure of that mortgage he advanced money to N., with which it was paid, and took N.'s notes for the amount, and his agreement that their payment should be secured by the same collaterals. *Held*, upon foreclosure of the $642 mortgage, that B.'s equitable rights as assignee to hold that mortgage as security for his whole claim against N. became fixed upon the assignment and said agreement, and although he afterward learned that N. had assumed to pay the W. mortgage, P. was not entitled to any deduction from the whole amount on account of N.'s failure to do so.

2. In an action by an assignee to foreclose a mortgage, assigned to him as collateral security for a larger debt, to which the mortgagee is not made a party, the mortgagor cannot set off or counterclaim the amount of a note against the mortgagee, purchased by him subsequent to the transfer of the mortgage.

APPEAL from the Circuit Court for *Jefferson* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

It is undisputed that about December 18, 1869, *Peter S. Twining* gave a note and mortgage on the premises in question to one Samuel Weiner for $400; and that the balance unpaid thereon July 31, 1872, was about $200; that on that day said *Peter* executed and delivered a note, payable three years from date, to his brother N. C. Twining, or bearer, for $642, with annual interest at ten per cent. until paid; and he and his wife at the same time executed and delivered a mortgage on said premises to secure the same; that, at

the time of executing and delivering said last-named note and mortgage, the said N. C. Twining assumed and agreed with said *Peter*, verbally, to pay the said balance unpaid on the Weiner note and mortgage, the amount of which was then included in, and formed a part of, the consideration of said $642; that April 29, 1874, the plaintiff loaned said N. C. Twining $950, taking his two notes therefor of $475 each,—one payable in one year, and the other in two, with interest on each at ten per cent.,— and a transfer to him of said note and mortgage of $642, as collateral security for the payment of said two notes, amounting to $950, and the same has since remained in the possession and control of the plaintiff as such collateral security; that at that time the plaintiff did not know that N. C. Twining had assumed and agreed to pay the amount remaining unpaid on the Weiner note and mortgage, nor that such amount was included in, or formed a part of, the consideration of said $642; that in June, 1875, Weiner commenced an action for the foreclosure of his said note and mortgage, and June 14, 1875, the plaintiff, at the instance and request of said N. C. Twining, paid thereon $180, and $30 costs therein, making $210, and took an assignment thereof to himself, under an agreement between them that the plaintiff should also hold the $642 note and mortgage as collateral security for the repayment of said $210; that the plaintiff did not then know that N. C. Twining had assumed or agreed to pay the balance of the Weiner note and mortgage, or that it formed a part of the consideration of said $642; that July 5, 1881, said *Peter* paid one dollar on said note and mortgage of $642, and the same was then indorsed thereon; that February 27, 1886, and in pursuance of an agreement then made between the plaintiff and N. C. Twining, the plaintiff assigned to the latter the Weiner note and mortgage to enable N. C. Twining to discharge the same of record, and he then gave to the plaintiff therefor his two notes of $144.50 each,

with interest at eight per cent., due, respectively, in eleven and fourteen months, amounting to $289, in repayment of the money advanced by the plaintiff on that note and mortgage, with interest to that date; and, as collateral security for the payment of said last two notes, it was agreed that the plaintiff should continue to hold said $642 note and mortgage; that the plaintiff had then for at least three years known that N. C. Twining had, July 31, 1872, assumed and agreed to pay the Weiner note and mortgage; that soon after February 27, 1886, N. C. Twining discharged the Weiner mortgage of record as agreed; that March 23, 1886, N. C. Twining delivered to the plaintiff a written assignment of said $642 note and mortgage, in pursuance of the agreements previously made between them, as stated; that May 14, 1886, the said $642 note and mortgage being in the First National Bank of Monroe, where it had been placed by the plaintiff for collection, the said *Peter S. Twining*, by his attorney, paid to said bank to apply on said note and mortgage, $700, and the same was then indorsed thereon as a payment; that before the plaintiff knew of said payment having been made, the teller, or some officer or agent of said bank, without the knowledge, consent, or approval of the plaintiff, paid $425 of the amount to N. C. Twining, on his claim of being equitably entitled thereto, and that the balance thereof, to wit, $275, together with the balance then due and unpaid on the $642 note and mortgage, was ample collateral security in the hands of the plaintiff for the payment of the balance due him from N. C. Twining on said several notes; that May 15, 1886, the plaintiff received from said bank said $275, and indorsed the same on the $475 note due April 29, 1875; that June 25, 1886, said *Peter S. Twining* purchased of one Robert Williams, and became the owner and holder of a note executed by said N. C. Twining, and delivered to said Williams December 6, 1876, for $240, one year after date, with interest at ten per cent.,

payable to said Williams or bearer, and upon which nothing had been paid, except $25, April 7, 1882; that said *Peter S.* continued to be the owner and holder of said Williams note and mortgage at the time of the commencement of this action, August 3, 1886.

This action was commenced at said last-mentioned date to foreclose said $642 note and mortgage so held by the plaintiff as collateral. The defendant, *Peter S. Twining,* by way of counterclaim insisted upon a deduction for the amount due him from N. C. Twining on the Williams note, and on account of the Weiner note and mortgage. In addition to the facts stated, the court in effect found, as matters of fact, that after allowing and deducting said two payments,— to wit, one of $1, and the other of $700, there remained due and unpaid on said $642 note and mortgage, December 8, 1886, the sum of $859.78; that there was then due to the plaintiff from N. C. Twining, on said two notes of $475 each, $611.57; and that there was then due to the plaintiff from N. C. Twining, on said two notes of $144.50 each, the sum of $307.05, making in all due to the plaintiff from N. C. Twining, and for which the plaintiff held said $642 note and mortgage as collateral security, the sum of $918.62; that there was then due to said *Peter S. Twining,* from said N. C. Twining, on said Williams note, $455.13; that N. C. Twining had no legal or equitable interest in the $642 note and mortgage, or the debt thereby secured, at the time *Peter S. Twining* purchased and became the owner and holder of said Williams note, to wit, June 25, 1886.

As conclusions of law the court in effect found that the plaintiff was then (December 8, 1886) entitled to the usual judgment of foreclosure and sale for the balance due on said $642 note and mortgage, to wit, the sum of $859.78, together with the costs and disbursements of the action, and personal judgment for any deficiency; that as against the plaintiff in this action, or the sum due, as aforesaid, on said

$642 note and mortgage, the defendant, *Peter S. Twining*, was not entitled to any legal or equitable setoff by reason of the amount due him from N. C. Twining on said Williams note. From the judgment entered in accordance with such findings of fact and conclusions of law the defendants bring this appeal.

For the appellants there was a brief by *Rogers & Hall* and *Geo. W. Bird*, and oral argument by *Mr. Bird* and *W. H. Rogers*. Among other things, they argued that the plaintiff, being a mere pledgee, even if without notice of the equities between the defendant and his assignor, could recover no more than his principal debt. *Union Nat. Bank v. Roberts*, 45 Wis. 373; *Curtis v. Mohr*, 18 id. 615; *Bowman v. Van Kuren*, 29 id. 209; *Valette v. Mason*, Smith (Ind.), 89; *Allaire v. Hartshorne*, 21 N. J. Law, 665; *Maitland v. Cit. Nat. Bank*, 40 Md. 540; *Easter v. Minard*, 26 Ill. 494; *Williams v. Cheney*, 3 Gray, 215; *Roche v. Ladd*, 1 Allen, 436, 443. The whole amount paid by the mortgagor to plaintiff's agent, the bank, should be credited on the mortgage, notwithstanding the unauthorized payment of part of it to the assignor. *State Savings Ass. v. Hunt*, 17 Kan. 532; *Best v. Crall*, 23 id. 483; *Hendrix v. Harman*, 19 S. C. 483; *Griswold v. Davis*, 31 Vt. 390; *Balme v. Wambaugh*, 16 Minn. 120; *Ward v. Smith*, 7 Wall. 447; *Russell v. Epler*, 10 Bradw. 304; *Overstreet v. Nunn's Ex'rs*, 36 Ala. 666; *Hall v. Page*, 4 Ga. 428; *White v. Platt*, 5 Denio, 269; *Stevens v. Hill*, 29 Me. 133. The plaintiff knew of defendant's equities at the time of his agreement with his assignor that the collaterals should be security for the amount advanced to take up the $200 mortgage, and hence is not entitled to recover that amount. With these deductions there would be a surplus, which would be subject to defendant's equities. 1 Daniell's Neg. Inst. 783, note 4; *Craighead v. Wells*, 8 Baxter (Tenn.), 38; *Collins v. Dawley*, 4 Col. 138; *Bealle v. South. Bk. of Ga.* 57 Ga. 274.

*A. S. Douglas*, for the respondent.

CASSODAY, J. None of the defendants answered or appeared in the case, except *Peter S. Twining*, who executed the $642 note and mortgage July 31, 1872, upon which this action is brought. He seeks to reduce the amount of the judgment.

1. There is no claim that he ever made any payment thereon, except the one dollar paid July 5, 1881, and the $700 paid May 14, 1886. After giving him credit for both of those payments, the trial court found there was still due from him thereon, December 8, 1886, a balance of $859.78. If he is entitled to have no allowance except those two payments, then the amount still due from him thereon cannot be less than the amount thus found; for that note and mortgage drew interest from date at the rate of ten per cent. per annum.

2. It is claimed, however, that the plaintiff is not entitled to judgment for the amount of the Weiner note and mortgage which N. C. Twining assumed and agreed to pay, and which was consequently included in the $642 note and mortgage. N. C. Twining is not a party to the action. No objection was or is made by reason of the omission. This being so, it may be questionable whether *Peter S. Twining* is in a position to prevent judgment being taken against him for the full amount so found due from him on the $642 note and mortgage, in favor of the plaintiff, who holds the legal title thereto, even if N. C. Twining were equitably entitled, as against the plaintiff, to such share of the judgment, when collected, as represented the amount of the Weiner note and mortgage. But assuming that *Peter S. Twining* may traverse such equities without N. C. Twining being a party to the suit, still it is confessed that *Peter S. Twining* never paid the amount of the Weiner note and mortgage so assumed, nor any part of it. This being so, he was justly liable to have judgment taken against him for the amount so found due on the $642 note and mortgage, in favor of somebody, notwithstanding any such equities.

The facts in relation to the Weiner note and mortgage were not such as to relieve *Peter S. Twining* from paying any portion of the $642 note and mortgage. It conclusively appears that those facts were unknown to the plaintiff, April 29, 1874, when he loaned to N. C. Twining the $950, and took a transfer to himself of the $642 note and mortgage as collateral security. So they were unknown to him June 14, 1875, when, at the instance and request of N. C. Twining, he paid the $210 on the foreclosure of the Weiner note and mortgage, and took an assignment thereof, under the agreement between them that he should also hold the $642 note and mortgage as collateral security for the repayment of the amount so paid. Those agreements and payments fixed the equities between the plaintiff and N. C. Twining respecting the matters mentioned. By virtue of those agreements and payments, the plaintiff had the equitable as well as the legal right to hold the $642 note and mortgage for the full amount, as collateral security for the repayment of the $950 and $210, and interest, not only as against *Peter S. Twining*, but also as against N. C. Twining.

The mere fact that the plaintiff ascertained, in 1883, that July 31, 1872, N. C. Twining had assumed and agreed to pay the balance of the Weiner note and mortgage, and that the same was then included in the $642 note and mortgage, in no way diminished the plaintiff's legal or equitable right to hold said last-named note and mortgage, as such collateral security for the full amount of his indebtedness against N. C. Twining; nor did it give any new right or equity which operated as a release of any part of such security, as against the plaintiff, to *Peter S. Twining*, and much less to N. C. Twining. N. C. Twining never paid any portion of such Weiner note and mortgage to the plaintiff, nor to any one, but merely consummated the settlement previously made with the plaintiff, by giving his two notes for the amount, and continuing the agreement that the plaintiff should hold the $642 note and mortgage as collateral secu-

rity to the indebtedness represented by said two notes, and the same was followed, in March, 1886, by a written assignment thereof to the plaintiff. It follows that *Peter S. Twining* is entitled to no reduction in the amount to be recovered, by reason of any equities ·growing out of the Weiner note and mortgage, nor any payment thereon, nor any agreement or payment respecting the same.

3. It is claimed that *Peter S. Twining* is entitled to counterclaim or setoff, against the amount so found due, the amount of the note executed by N. C. Twining and purchased by *Peter S. Twining* from Williams, June 25, 1886. Certainly it could not be a counterclaim, because it did not exist against the plaintiff. Sec. 2656, R. S. For the same reason it is not available as a setoff. Sec. 4258, R. S. The claim sought to be interposed is against N. C. Twining, a stranger to this controversy. Besides, the Williams note was not purchased by *Peter S. Twining* until long after the plaintiff's legal and equitable right to recover the whole of the $642 note and mortgage, less the two payments mentioned, became fixed as against N. C. Twining. This being so, such purchase could not frustrate, much less destroy, the plaintiff's rights thus secured. As appears from the findings of the court, there was due to the plaintiff, December 8, 1886, from N. C. Twining, on the several notes mentioned, in the aggregate, $918.62, whereas there was due from *Peter S. Twining*, on the $642 note and mortgage so held as collateral, after deducting two payments made by him, as stated, only $859.78. Thus it appears that the whole amount of such collateral is insufficient to satisfy the plaintiff's claims against N. C. Twining, and hence there can be no surplus to be turned over to him. The fact that there would have been such surplus had the plaintiff received the whole of the $700 payment, and collected the full amount of the judgment, in no way changes the equitable rights of the plaintiff. N. C. Twining took the $425 from the bank

before *Peter S. Twining* purchased the Williams note. Before such purchase, therefore, N. C. Twining, by taking and appropriating to himself so much of that payment, more than satisfied and discharged all subsisting equities in his favor in such collateral. This being so, it is idle to talk about an equitable setoff in his favor, much less in favor of *Peter S. Twining*, by reason of such subsequent purchase. The findings are all supported by the evidence.

*By the Court.*— The judgment of the circuit court is affirmed.